IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL J. LINDELL and MY PILLOW, INC.,<br><br>Defendants. | Case No. 23-2200<br>[D. Minn. Case No. 22-cv-0098-WMW-JFD]<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH DEPOSITION SUBPOENA TO CARLOTTA WELLS** |

Michael Lindell and My Pillow, Inc. (together, "Defendants") move the Court to order Carlotta Wells to appear for a deposition, in compliance with a subpoena issued by the Defendants in this action. The Government has asserted objections to the subpoena based on the doctrine of *Touhy v. Ragen*, 340 U.S. 462 (1951). However, the testimony sought by the subpoena is important to Defendants' defenses in this action, and *Touhy* is not appropriately applied under these circumstances.[1]

**I.      Facts**

Plaintiffs (collectively, "Smartmatic") sell technology and software used to administer elections. First Supp. Compl. ¶ 10 (Decl. of Andrew D. Parker ¶ 30 & Ex. Q) ("Complaint"). Smartmatic has asserted defamation claims against Defendants based on statements made by Lindell about the 2020 presidential election. *Id.* ¶ 367. According to the Complaint, Lindell stated that Smartmatic's election technology and software was compromised or hacked by foreign actors during the 2020 presidential election. *Id.*

---

[1] Defendants will soon file a similar motion to compel deposition testimony of John Negroponte, in the same underlying action.

Lindell's statements about the 2020 election being hacked were based in part on information Lindell received about the work of Dennis L. Montgomery. Decl. of Michael Lindell ¶ 2; *see* Compl. ¶ 309 (allegations concerning "Hammer" and "Scorecard"). Lindell received information from other people, and then directly from Montgomery, that many years ago Montgomery had provided computer programming services to the United States government, when Montgomery worked for two companies that contracted with the United States government. Lindell Decl. ¶¶ 2-3. Montgomery was a co-owner of one of these companies. *Id.* ¶ 2. Lindell heard that at these companies Montgomery had developed and used computer software that allowed the federal government to monitor internet communications and to manipulate computerized voting machines used in foreign countries. *Id.* Lindell heard that Montgomery's election-manipulating software was obtained by persons in China, and that Montgomery obtained copies of internet transmissions showing the software was used by persons in China to change votes in the 2020 presidential election. *Id.* Montgomery's history of working for the United States government was one of the reasons Lindell believed the information he heard about Montgomery. *Id.* ¶ 4.

Information concerning Montgomery's past and his work for the federal government is important to Lindell's defenses in this action, because Montgomery's past and work for the federal government provided Lindell with substantial reason to believe the information he received about and from Montgomery, and because information about Montgomery's past and work for the federal government tends to support the statements Lindell made. The testimony of Carlotta Wells is an important part of that evidence because Ms. Wells has been closely connected with Montgomery's work for the federal government going back at least seventeen years.

In 2006, a dispute arose between Montgomery and a business partner concerning the business they co-owned, eTreppid Technologies, Inc. *See* Parker Decl. ¶ 2 & Ex. A (Complaint of Dennis Montgomery). Two lawsuits resulted: *eTreppid Technologies, LLC v. Montgomery* and *Montgomery v. eTreppid Technologies, Inc.* (together, the "eTreppid Litigation").[2] The United States government sought and obtained entry of a protective order in the eTreppid Litigation based on its assertion of the state secrets privilege. *See* Parker Decl. ¶ 3 & Ex. B (Motion); Parker Decl. ¶ 4 & Ex. C (Order); Parker Decl. ¶ 5 & Ex. D (Protective Order).

The attorney who signed the United States government's motion seeking the protective order in the eTreppid Litigation was Carlotta Wells. Parker Decl. Ex. B at 16. The motion signed by Ms. Wells stated, "Montgomery signed a Classified Information Nondisclosure Agreement (Nondisclosure Agreement), which was executed with the Defense Security Service, an agency within the [Department of Defense." *Id*. at 6. The motion acknowledged that Montgomery had brought a claim against the Department of Defense, alleging that he was "prevented from fully disclosing the information he needs to present his case because he signed a 'secrecy contract' with the United States government relating to the nature of the work that he performed on behalf of the government while associated with eTreppid." *Id*. at 5. The motion asked the Nevada court to enter a protective order because "the United States has properly asserted the military and state secrets privilege in these cases," and "the information to be protected from disclosure includes information concerning the existence or non-existence of any actual or proposed relationship involving any U.S. intelligence agency and any individuals and/or companies associated with these lawsuits and any actual or proposed interest in, application of, discussion of, or use by an intelligence agency of any technology owned or claims by individuals and/or companies

---

[2] These are no. CV-N-06-00145 and no. CV-N-00056 in the U.S. District Court for the District of Nevada.

associated with these lawsuits." Id. at 12-13. On August 29, 2007, the Nevada District Court entered the protective order ("Nevada Protective Order") sought by Wells, stating that the court had reviewed "<u>in camera</u>" a "Classified Declaration" from the Director of National Intelligence, and that information from the filings in the eTreppid Litigation was redacted on the basis of the state secrets privilege. Parker Decl. Ex. D at 2.

Following the entry of the Nevada Protective Order, Wells engaged in numerous interactions with Dennis Montgomery. On June 24, 2008, Wells appeared at a hearing in which Montgomery was testifying, and asked the court to prevent Montgomery from answering a question on the basis of the Nevada Protective Order. Parker Decl. ¶ 6 & Ex. E at 106:14-24 (Tr. of Hearing). At the same hearing, Wells obtained permission from the court to remove pages from certain exhibits used at the hearing to have them redacted. Id. 214:13-216:20, 235:6-10. At a prior hearing, Wells told the court that she had attempted to arrange a meeting with Montgomery on two occasions to review the terms of the Nevada Protective Order. Parker Decl. ¶ 7 & Ex. F at 163:9-164:1, 167:11-168:8 (Tr. of Hearing). At a follow-up hearing, Wells prevented Montgomery from answering questions on the basis of the Nevada Protective Order. Parker Decl. ¶ 8 & Ex. G at 179:3-180:25 (Tr. of Hearing).

Montgomery has testified by declaration that on March 4, 2010, federal law enforcement officers seized documents from Montgomery's attorneys, the Liner Law Firm. Parker Decl. ¶ 9 & Ex. H ¶¶ 25-26 & ex. 12 (Decl. of Montgomery). Montgomery's declaration and an attached exhibit show that Wells was involved with the Department of Justice's review of materials taken from Montgomery's attorneys for "security review." Id. at Ex. 12.

On January 14, 2011, Montgomery gave a deposition in his bankruptcy proceeding. Parker Decl. ¶ 10 & Ex. I at 14:21-15:3, 15:23-19:15 (Dep. Tr.). Wells appeared at the deposition

on behalf of the federal government. *Id.* She was accompanied by two individuals from the federal government whose full names she refused to provide. *Id.* Wells stated that her purpose in attending the deposition was to enforce the terms of a protective order. *Id*. at 21:16-22:5.

On April 27, 2015, Montgomery filed a declaration in the U.S. District Court for the Southern District of Florida in which he described certain conversations he had with Wells, in which Wells "told me that if I talk to the press or leaked information, I will be charged with treason for disclosing my work with the NSA and CIA," and said, "If the US Government wants to leak false information to the press to hide successful work, and to confuse terrorist groups, they will do it irrespective of my rights." Parker Decl. ¶ 11 & Ex. J ¶¶ 70-71 (Decl. of Montgomery).

Defendants issued a subpoena ("Wells Subpoena") to Carlotta Wells to provide a deposition in this case. Decl. of Andrew Parker ¶ 12 & Ex. K. Attached to the Wells Subpoena was a statement explaining why the *Touhy* factors permitted the deposition of Wells in this case. *Id*. at Ex. 2. The subpoena was personally served upon Wells on March 21, 2023. Parker Decl. Ex. L. On April 3, 2023, Defendants received responsive correspondence from the Department of Justice refusing to allow the testimony sought by the Wells Subpoena on the basis of the principles articulated in *Touhy v. Ragen*, 340 U.S. 462 (1951). Parker Decl. ¶ 13 & Ex. M.

II.     **Argument**

The information sought by the subpoena to Ms. Wells is important to the Defendants' defenses and is reasonably capable of being provided by Ms. Wells without undue burden. Accordingly, Ms. Wells should be compelled to provide deposition testimony in this case.

**A. Legal Standard**

Fed. R. Civ. P. 45 provides the standard governing a federal agency's response to a subpoena. *Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007) ("Rule 45's privilege and undue

burden standard thus applies to both document and testimonial subpoenas . . . . Moreover, an agency's *Touhy* regulations do not relieve district courts of the responsibility to analyze privilege or undue burden assertions under Rule 45."). *See* 5 U.S.C. § 301 (authorizing *Touhy* regulations but providing, "This section does not authorize withholding information from the public or limiting the availability of records to the public."). Under Rule 45, "The burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged." *Buzzfeed, Inc. v. United States DOJ*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018) (quoting *In re Micron Tech., Inc. v. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010)).

Two principles guide the Court in determining whether a subpoena would impose an undue burden on the Government. The Court must be "generally sensitive to the costs imposed on third parties," *Buzzfeed,* 318 F. Supp. 3d at 358 (D.D.C. 2018), and the Court must consider the factors under Fed. R. Civ. P. 26(b) including:

> (1) whether the discovery sought is 'unreasonably cumulative or duplicative'; (2) whether the discovery sought 'can be obtained from some other source that is more convenient, less burdensome, or less expensive'; and (3) whether the discovery sought is 'proportional to the needs of the case,' taking into account 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'

*Id*.

### B. Wells Should Be Required to Provide Deposition Testimony.

Carlotta Wells should be required to provide deposition testimony because her knowledge concerning Dennis Montgomery's work for the federal government is probative concerning the reasonability of Lindell's reliance on Montgomery's work and concerning the accuracy of the statements made by Montgomery concerning the 2020 election.

As described above, Defendants have strong basis to believe that Wells can provide testimony concerning the following public, non-secret matters, that support Lindell's defenses in this action:

- Montgomery worked on U.S. government programs that involved information protected by the state secrets privilege;

- The federal government undertook active measures to prevent Montgomery from disclosing state secrets;

- Wells was tasked with monitoring Montgomery from 2006 through at least 2011 to prevent Montgomery from disclosing in court proceedings certain information related to his work for the federal government;

- In 2008, Wells attended a deposition of Montgomery, bringing along two federal agents whose full names and specific employer she refused to identify, in order to prevent disclosure of any state secrets in Montgomery's testimony;

- In 2010, the federal government seized boxes of documents related to Montgomery's work for the federal government from the office of Montgomery's attorney, and Wells reviewed those documents for state secrets, removing some documents to prevent disclosure of their contents;

- Wells engaged in discussions with Montgomery on multiple occasions concerning the scope of the state secrets privilege and what information Montgomery was permitted to disclose or prohibited from disclosing;

- Wells engaged in discussions with Montgomery in which she threatened that he would suffer negative consequences if he disclosed his work for the federal government;

- The information known by Montgomery that Wells was tasked with protecting from at least 2006-2011 continues to be subject to the state secrets privilege today.

- Publicly available documents mentioning Wells accurately reflect what happened, or, if not, what is not accurate in those public documents.

Critically, *none* of these matters are secret. They all appear in publicly available documents. And each of these items tends to support Lindell's reliance on information about Montgomery's work, when Lindell made the statements alleged to be defamatory in Smartmatic's Complaint. Lindell is entitled to discover information, in a form admissible at trial, to substantiate these matters. The reasonableness of Lindell's reliance is directly related to the questions of whether he actually believed what said, and whether it was "inherently improbable" for him to believe this, *see St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("The finder of fact must determine whether the publication was indeed made in good faith. Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation.").

Carlotta Wells is the best witness to provide the information listed above – for many of the items, she is the *only* witness known to Defendants who can provide it – because these events focus on her personal interactions with Montgomery.

No privilege bars discovery of the information described above. Defendants do not intend to ask Wells to disclose any information protected by the attorney-client or work product privileges, but merely to testify concerning the facts of what happened in each instance. Nor does

the state secrets privilege apply, because Defendants are not seeking to compel the disclosure of any secret information, but rather to obtain testimony in admissible form confirming information that is already in the public record.

A deposition of Wells would not impose an undue cost or burden. Defendants have not asked Wells to search for or produce any documents, but merely to provide testimony concerning what she knows.

Finally, the subpoena to Wells satisfies the *Touhy* regulations of the Department of Justice, her employer. It states the information sought by Defendants and its relevance to the claims at issue in this case, and it does not request information that is prohibited to be disclosed by the *Touhy* regulations. Parker Decl. Ex. K at Ex. 2; 28 C.F.R. § 16.21 *et seq*.

**C. The Government's Objections to the Wells Subpoena Are Without Merit.**

The Department of Justice's response to the Wells Subpoena refused to permit Ms. Wells to be deposed. Parker Decl. ¶ 13, Ex. M ("Wells Response"). The Wells Response cited four reasons for this decision. *Id*. None of those reasons provide any basis to prevent the deposition of Wells.

**Relevance and Proportionality.** The Wells Response asserts that the information sought is not relevant or proportional to the needs of this case. *Id*. at 2. This argument rests on the assertion that the Wells Subpoena seeks information about a lawsuit "filed seventeen years ago and dismissed over a decade ago." *Id*. at 3. This argument is without merit for two reasons. First, the Wells Subpoena extends beyond the *eTreppid* litigation to events in other cases – matters that the Wells Response simply ignores. Second, and more importantly, the purpose of the Wells Subpoena is not to relitigate the *eTreppid* litigation. Rather, the subpoena seeks to establish certain facts concerning Montgomery's work for the federal government, facts which Smartmatic may argue are hearsay when presented at trial unless Defendants obtain admissible testimony to

9

establish them. Those facts are relevant to the Defendants' defenses in this case because Defendants anticipate that a central issue will be the reasonability/plausibility/inherent improbability of the information on which Lindell relied when making the allegedly defamatory statements in question. Defendants are entitled to discover facts central to their arguments on that point – even if those facts concern events from some time in the past. Further, the facts to which Wells can testify are probative concerning the accuracy of the statements Lindell made in reliance on information he received about Montgomery's work.

The discovery sought by the Wells Subpoena is proportional to the needs of this case because only a single deposition is sought, and the stakes of the case are high. Smartmatic's Complaint alleges more than $2 billion in damages. Parker Decl. Ex. Q ¶ 365. Regarding proportionality, the Department of Justice argued in the Wells Response that "Ms. Wells' only involvement in *eTreppid* was as counsel for the United States in its assertion of the states secret privilege in that case." Wells Response at 3. However, the government's attempt to minimize Ms. Well's interactions with Mr. Montgomery is contrary to the information already in the public record. Ms. Wells followed Mr. Montgomery through at least three days of hearings over a period of two months in the *eTreppid* case in 2008, and then she appeared at a deposition of him in an entirely different lawsuit in 2011. Parker Decl. ¶¶ 6-10 & Exs. E-I. Wells on two separate occasions was involved in the seizure of documents from Mr. Montgomery or his attorneys for Department of Justice review. Parker Decl. ¶ 6 & Ex. E at 214:13-216:20, 235:6-10; Parker Decl. ¶ 9 & Ex. H ¶¶ 25-26 & ex. 12. Wells engaged in discussions with Mr. Montgomery outside the context of the *eTreppid* litigation. *See* Parker Decl. ¶ 11 & Ex. J ¶¶ 70-71.

The topics identified in the Wells Subpoena extend beyond the *eTreppid* case. The point that Montgomery possessed information important enough for the Department of Justice to

10

dispatch Wells to shadow his court appearances over a period of many years, and to review many boxes of documents seized from the offices of Montgomery's attorneys, is an important one for which Defendants are entitled to establish the factual basis.

**Information Protected from Disclosure.** The Wells Response secondly asserts that the information sought by the Wells Subpoena is protected by the Protective Order in the *eTreppid* case. Wells Response at 3. This assertion is simply incorrect. None of the topics described above delve into the issues covered by the *eTreppid* Protective Order. The topics have been crafted to focus on establishing the factual basis for information that is already suggested in the public record. Furthermore, the Government is simply incorrect in its attempt to apply the *eTreppid* Protective Order in this case – by the Government's own admission.

Defendant Michael Lindell sought to intervene in the *eTreppid* case in the District of Nevada to obtain relief from the very same Protective Order cited by the Government. *See* Parker Decl. ¶ 27 & Ex. N. The Government opposed Lindell's motion to intervene. Parker Decl. ¶ 28 & Ex. O. The Government told the Nevada court that the Protective Order should not be lifted **because the order "does not apply to any litigation but the above-captioned cases in which it was entered."** *Id.* at 1 (emphasis added). Not to be misunderstood, the Government stated unequivocally, "The point is simply that **the Protective Order entered in this case from which Lindell seeks relief has no relevant effect on the defamation litigation or his ability to obtain or use any information he needs therein.**" *Id*. at 7. On May 15, 2023, the Magistrate Judge in *eTreppid* issued a Report & Recommendation concluding that Lindell's motion to intervene should be denied because "the protective order does not apply to any other litigation. Therefore, it is not the protective order entered in this case that would preclude Lindell from

11

introducing the information he seeks to utilize in his defense in the defamation action." Parker Decl. ¶ 29 & Ex. P.

Having (successfully) told one federal court that the Protective Order does not bar Lindell from obtaining discovery in this defamation action, the Government cannot now reasonably be heard to argue to a different federal court that the very same Protective Order bars Ms. Wells from providing deposition testimony in this defamation action. The Protective Order in *eTreppid* presents no obstacle to the deposition testimony sought by the Wells Subpoena.

**No Personal Knowledge/More Convenient Source.** The Wells Response thirdly asserts that the Wells Subpoena seeks information that Wells does not know or for which there is a more convenient source. Wells Response at 4. It is clear from the documents attached to the Wells Subpoena that Wells knows a *large amount* of information sought by the subpoena. She can testify concerning the hearing, deposition, and email, and her involvement in the events surrounding them. If there are narrow areas about which Wells lacks knowledge, she can simply testify at her deposition that she does not know the answers to those particular questions.

On the issue of allegedly "more convenient sources," there is simply no better witness to ask about Wells's own actions than Wells herself. The Department of Justice points to Montgomery as a source, but Montgomery is not a better source concerning Wells's own actions. The Department of Justice's misdirecting allusion to matters *not* covered by the Wells Subpoena (*e.g.* "computer source code, software, programs, or technical specifications . . ." Wells Response at 4) is merely an attempt to obscure the reality that the Wells Subpoena is directed toward information for which the best source is Wells. The argument that Wells should not be required to testify concerning what she knows, because other information not sought by the Wells Subpoena could be obtained from a different source, is a non sequitur.

**Privileged Information.** Finally, the Department of Justice asserts that the Wells Subpoena seeks privileged information. Wells Response at 5. The Department admits that the Wells Subpoena states that Defendants do not intend to ask Wells to disclose privileged information. *Id*. at 5. The privilege issue is discussed above. The issues about which Defendants intend to ask Wells do not fall within gray areas where privilege may or may not apply. Her public actions and statements, and communications with Montgomery, are not privileged, and it is not appropriate for DOJ to attempt to conceal plainly non-privileged information by pointing to the existence of quite separate privileged matters.

The D.C. Circuit has explained that "an agency's *Touhy* regulations do not relieve district courts of the responsibility to analyze privilege or undue burden assertions under Rule 45." *Watts*, 482 F.3d at 508. The purpose of *Touhy* regulations is "internal housekeeping and determining who within the agency must decide how to respond to a federal court subpoena." *Id.* at 508-509; *see id.* at 509 ("[T]hough an agency regulation may provide the method by which an agency head will comply with or oppose a subpoena, the legal basis for any opposition to the subpoena must derive from an independent source of law such as a governmental privilege or the rules of evidence or procedure.") (quoting 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 45.05[1][b] (3d ed. 2006)).

Under Rule 45, "The burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged." *Buzzfeed, Inc.,* 318 F. Supp. 3d at 356 (D.D.C. 2018) (quoting *In re Micron Tech.*, 264 F.R.D. at 9) (internal quotations removed). The testimony Defendants seek from Wells is not privileged. Nor is it unduly burdensome, for it does not seek information cumulative of testimony already obtained, and cannot be sought from a more convenient, less burdensome, or less expensive source. A single

deposition, without any associated production of documents, is proportional to the needs of the Defendants to establish the facts concerning Montgomery, upon whom Lindell heavily relied in making the defamatory statements at issue. This point has great importance to the Defendants' defense, the amount in controversy in this case is large, there is no other good source concerning Wells's actions other than Wells herself, and the burden of this important discovery is minimal compared with its benefit. Wells needs to provide a deposition.

### III. Conclusion

Defendants' subpoena to Carlotta Wells is appropriate and enforceable. The Court should order Ms. Wells promptly to provide the deposition testimony sought by Defendants in this case.

DATED: July 28, 2023                                    **PARKER DANIELS KIBORT LLC**

By */s/ Andrew D. Parker*
Andrew D. Parker (D.C. Bar No. 63279)
888 Colwell Building
123 N. Third Street
Minneapolis, MN 55401
Telephone: (612) 355-4100
Facsimile: (612) 355-4101
parker@parkerdk.com

*Counsel for Defendant Michael Lindell*

By */s/ Andrew D. Parker*
Andrew D. Parker (D.C. Bar No. 63279)
Joseph A. Pull (D.C. Bar No. 982468)
888 Colwell Building
123 N. Third Street
Minneapolis, MN 55401
Telephone: (612) 355-4100
Facsimile: (612) 355-4101
parker@parkerdk.com
pull@parkerdk.com

*Counsel for Defendant My Pillow, Inc.*